# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ROBERT SAM RAISCH JR.,             Case No. 19-CV-0894 (MJD/ECW)

           Petitioner,

v.                        **REPORT AND RECOMMENDATION**

EDDIE MILES,

           Respondent.

---

## I.    INTRODUCTION

This matter comes before the Court on Petitioner Robert Sam Raisch, Jr.'s (1) Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Dkt. 1 ("Petition")); and (2) Pro Se Motion for Clarification of Facts and Correction of Materially Prejudicial False Statements by Respondents (Dkt. 18) ("Clarification Motion").  For the following reasons, the Court recommends dismissing the Petition and denying the Clarification Motion as moot.

## II.    BACKGROUND

### A.    Investigation and Trial

This matter's relevant procedural history through trial is well-summarized by the Minnesota Court of Appeals's decision in Raisch's direct appeal:

#### I.    *The fire and initial investigation*

Prior to midnight on March 7, 2015, a police deputy was dispatched to the victim's trailer on a report of a fire.  After firefighters put out the fire, the deputy discovered human remains in the debris, which were later identified as those of the victim.

During the subsequent examination of the victim's remains, the medical examiner observed "dried, flaky, red-brown material that was very consistent with blood," which is not typical of "just fire-related injuries." The medical examiner also noticed at least six depressed skull fractures and trauma to the brain including coloration consistent with bleeding. Although police recovered several tools from the crime scene, the medical examiner was not able to determine which tool caused the injuries. The medical examiner determined that the cause of death was attributed to blunt-force injuries of the head, smoke inhalation, and thermal injuries.

On March 9, 2015, three police investigators questioned a friend of the victim about the case. During the questioning, R.W. exited a vehicle that pulled into the driveway and approached the investigators and the victim's friend. R.W. appeared nervous, and one of the investigators noticed a person in the vehicle ducked down in the backseat. Based on the suspicious occurrence, investigators had patrol officers stop the vehicle after it left. [Raisch] was identified as one of the passengers in the vehicle.

## II.    Charges and trial

The Pine County Attorney charged appellant with second-degree intentional murder, without premeditation, in violation of Minn. Stat. § 609.19, subd. 1 (2014); second-degree felony murder, without intent, in violation of Minn. Stat. § 609.19, subd. 2(1) (2014); first-degree arson in violation of Minn. Stat. § 609.561, subd. 1 (2014); and first-degree assault in violation of Minn. Stat. § 609.221, subd. 1 (2014).

At the trial, the jury heard testimony from numerous witnesses including A.L. and E.N., who testified for the state, and [Raisch], who testified on his own behalf. The state also presented *Spreigl* evidence of appellant's prior convictions for aggravated robbery and vehicle theft.

### A.    A.L. and E.N.'s testimony

A.L. testified that, in the late afternoon on March 7, appellant, R.W., and E.N. went to A.L.'s house and requested a ride in A.L.'s truck. A.L. had not previously met [Raisch] or E.N. A.L. attempted to dissuade the men from using her truck, but eventually agreed, and [Raisch] drove E.N. and A.L. to the victim's trailer.

Upon arriving at the victim's trailer, E.N. testified that he, [Raisch], and the victim discussed a prior event involving [Raisch] borrowing the victim's truck. After the conversation, [Raisch], E.N., and A.L. drove away; made a stop at [Raisch's] mother's house; and then returned to the victim's

2

trailer.  Upon arrival, [Raisch] and E.N. exited but told A.L. to stay in the truck.

E.N. testified that, inside the trailer, [Raisch] and the victim began to argue about the victim's truck, and [Raisch] forcefully pushed the victim onto the floor and into "a bunch of tools."[1]  E.N. went outside to tell A.L. to start the truck because he thought the fight was getting out of hand, and he wanted to prompt [Raisch] to leave.  [Raisch], however, had the keys to the truck.  E.N. went back inside, where he saw [Raisch] but not the victim.  When E.N. asked [Raisch] where the victim was, [Raisch] told E.N. that the victim "was in the middle bedroom" and E.N. "didn't have to worry about him."  E.N. went to look for the victim and found him unconscious on the floor with blood on his face and chest.  When E.N. left the bedroom, he observed fire in both the kitchen and living room.

Once outside, E.N. testified that he saw [Raisch] standing on the porch, holding the victim's .22 rifle.  When [Raisch] and E.N. returned to the vehicle, A.L. saw them put "things in the back of the truck," including a large television and some speakers.  When [Raisch] and E.N. got back in the vehicle, A.L. observed blood on [Raisch's] hand and E.N.'s cheek.  E.N. testified that he did not see any blood on [Raisch], but he could smell it.

A.L. also testified that during the event at the victim's trailer, [Raisch] opened the door to the truck while holding a big metal tool.  [Raisch] then said that "[he] just killed that guy."  A.L. told [Raisch] that he was crazy, and [Raisch] said, "You're right, I didn't do it. I didn't."

After leaving the victim's trailer, [Raisch] drove to two other houses, to the casino, and to another house where he and E.N. sold the items in the back of the truck.  Subsequently, Officer Heidt pulled over [Raisch], E.N., and A.L. while [Raisch] was driving.  Officer Heidt told A.L. that she had to drive.

---

1        A footnote here in *Raisch I* reads as follows:

Another witness testified that, in early March, she observed a confrontation between [Raisch] and the victim over money.  [Raisch] pushed the victim, and the victim "said that he would pay him."  The witness testified that at the time of the confrontation, [Raisch] said he could kill the victim and "mentioned something about burning the house down."

*Raisch I*, 2017 WL 1134403, at *2 n.1.

After making another stop, A.L. drove the men back to [Raisch's] mother's house. E.N. testified that, while E.N. was taking a shower at [Raisch's] mother's house, [Raisch] took E.N.'s clothes away, and E.N. never again saw the clothes he and [Raisch] wore that night. A.L. testified that she later gave a statement to the police; showed the police the locations to which she, [Raisch], and E.N. traveled on March 7; allowed the police to search her vehicle and house; surrendered the clothes she wore on that day; and provided a DNA sample.

B.    *[Raisch's] testimony*

[Raisch] testified that he and the victim became acquainted in February 2015 because the victim had connections for obtaining methamphetamine. [Raisch] further testified that, prior to March 7, an argument ensued between the victim and E.N. because the victim owed E.N. money for drugs. The victim also accused [Raisch] of stealing his truck.

[Raisch] testified that the purpose of going to the victim's trailer on March 7 was for E.N. to get the money owed to him. After the first visit to the victim's trailer, [Raisch] testified that he, E.N., and A.L. went to the liquor store, where [Raisch] left E.N. and A.L. alone. When E.N. and A.L. arrived at [Raisch's] mother's house, E.N. asked if [Raisch] knew where to sell a television and speakers. With reference to the victim's death, [Raisch] testified that he "didn't kill [the victim.] [E.N.] and [A.L.] did it."

At the end of a ten-day trial, the jury found [Raisch] guilty of second-degree intentional murder, second-degree felony murder, and first-degree assault. After the trial, [Raisch] filed a motion for judgment of acquittal and a new trial. The district court denied [Raisch's] motion. The district court entered judgment of conviction and sentenced [Raisch] to 480 months in prison for second-degree intentional murder. . . .

*State v. Raisch*, No. A16-0586, 2017 WL 1134403, at *1-3 (Minn. Ct. App. Mar. 27, 2017) ("*Raisch I*").[2]

---

[2]    Most of the brackets in this block quote have been added, but the brackets around "the victim," "E.N.," and "A.L." in the penultimate paragraph are in the original.

**B.      Later State Court Proceedings**

After his conviction, Raisch filed a direct appeal.  *See generally Raisch I*, 2017
WL 1134403.  A brief by appointed counsel presented three arguments.  (*See generally*
Dkt. 10-3 at 23-50.)  First, counsel argued that the trial court impermissibly permitted
evidence of Raisch's prior convictions for aggravated robbery and motor-vehicle theft.
(*See id.* at 23-35.)  Second, counsel asserted that the trial court had erred by denying a
mistrial motion filed after the trial court introduced other-bad-act evidence that was
purportedly "inadmissible and highly prejudicial."  (*Id.* at 42; *see also id.* at 36-40.)
Third, counsel claimed that the trial court had erred by "refusing to instruct the jury that
Raisch could not be convicted based on [A.L.'s] uncorroborated testimony where the jury
could have found that [A.L.] was an accomplice."  (*Id.* at 47; *see also id.* at 47-56.)
Raisch also filed a pro se supplemental brief with eight additional arguments.  *See Raisch
I*, 2017 WL 1134403, at *6.[3]  The Minnesota Court of Appeals considered these

---

[3]      Specifically, Raisch argued that (1) "there [was] insufficient evidence that he
caused the victim's death because [he] was not convicted of arson"; (2) "the district court
prejudiced him when it admitted evidence of several tools found in the victim's trailer
consistent with the victim's skull injuries"; (3) all the admitted arson-related evidence
was inadmissible because "the fire marshal received misleading information about
someone confessing to starting the fire"; (4) the trial court violated his Sixth Amendment
confrontation right by not admitting evidence of A.L.'s prior assault conviction; (5) the
trial court erred when it "declined to allow the jury to listen to E.N.'s prior statement
during deliberations" and "denied the jury's request to pause surveillance video during
deliberations"; (6) "the guilty verdicts of second-degree intentional murder and second-
degree felony murder are contradictory"; (7) certain medical-examiner testimony was
confusing and based on hearsay, requiring reversal; and (8) the trial court "conducted her
own investigation and 'created the appearance of impropriety.'"  (*Id.* at *6-8.)

arguments on the merits, rejected them all, and affirmed Raisch's conviction. *See id.* at *1.

In April 2017, Raisch's counsel filed a petition for review with the Minnesota Supreme Court. (*See* Pet. for Review of Ct. of Appeals' Decision, *State v. Raisch*, No. A16-0586 (Minn. Apr. 19, 2017) ("April 2017 Petition").[4]) The petition for review focused on two issues: (1) whether Raisch's prior convictions should have been admissible evidence; and (2) whether "[t]he district court committed reversible error by not instructing the jury that Lopez's testimony had to be corroborated if the jury found she was an accomplice." (*Id.* at 5-6.) The Minnesota Supreme Court declined review on May 30, 2017. *See Raisch I*, 2017 WL 1134403, at *1.

In January 2018, Raisch (proceeding without counsel) filed a petition for postconviction relief in Minnesota state court. (*See* Pet. for Post-Conviction Relief Pursuant to Minn. Stat. § 590.01, subd. 1, *State v. Raisch*, No. 58-CR-15-321 (Minn. Dist. Ct. Jan. 5, 2018) ("January 2018 Petition"); Mem. in Supp. of Pet. for Post-Conviction Relief Pursuant to Minn. Stat. § 590, *State v. Raisch*, No. 58-CR-15-321 (Minn. Dist. Ct. Jan. 5, 2018) ("January 2018 Memorandum").) The Court will address Raisch's grounds for postconviction relief as needed below; essentially, Raisch raised a

---

[4]    As best as the Court can tell, Raisch's direct-appeal petition for review by the Minnesota Supreme Court (as well as several other documents) was not provided to this Court by the parties. It is publicly accessible, however, and this Court may take judicial notice of public court records. *See, e.g.*, *Graham v. U.S. Marshal*, No. 20-CV-1204 (WMW/LIB), 2020 WL 4060731, at *1 n.1 (D. Minn. June 29, 2020) (citing *Bellino v. Grinde*, No. 18-CV-1013, 2019 WL 368398, at *1 n.1 (D. Minn. Jan. 30, 2019)), *R.&R. adopted*, 2020 WL 4059889 (D. Minn. July 20, 2020).

variety of claims of ineffective assistance of trial and appellate counsel.  (*See* Jan. 2018 Pet. at 1-2.)  The state court denied the January 2018 Petition in an order dated February 28, 2018.  (*See* Order Denying Request for Post-Conviction Relief, *State v. Raisch*, No. 58-CR-15-321 (Minn. Dist. Ct. Feb. 28, 2018) ("February 2018 Order").)

Raisch appealed the February 2018 Order to the Minnesota Court of Appeals. (*See* Dkt. 10-6 at 1-31 (comprising appellate brief).)  Again, the Court will bypass discussion of the appeal grounds now and incorporate them as needed into the discussion below.  The Minnesota Court of Appeals affirmed the trial court's denial of Raisch's petition, noting generally that Raisch "ha[d] not shown that his trial or appellate attorneys were ineffective."  *Raisch v. State*, No. A18-0536, 2018 WL 4391108, at *1 (Minn. Ct. App. Sept. 17, 2018) ("*Raisch II*").  Raisch filed a petition for further review with the Minnesota Supreme Court, but the court denied review.  (*See* Pet. for Review of Court of Appeal's Decision Filed Sept. 17, 2018, *Raisch v. State*, No. A18-0536 (Minn. Oct. 29, 2018) ("October 2018 Petition"); *Raisch II*, 2018 WL 4391108, at *1.)

## C.    Proceedings in This Court

The present Petition before the Court raises four substantive counts, which the Court will describe in more detail below.  The Court set a briefing schedule several days later (*see* Dkt. 4 and 1), and by the end of June 2019, briefing appeared to be complete. (*See* Dkt. 10, 11.)[5]

---

[5]    Indeed, briefing should have been complete; the Court's briefing schedule did not allow for additional submissions by the parties after Raisch filed his reply.  (*See* Dkt. 4 at 1-2.)

On June 3, 2020, Raisch filed a document titled (in relevant part) "Supplement to Motion to Alter or Amend Petition Filed 6.3.2019." (Dkt. 12 ("Motion to Supplement").) This Court was unaware of any earlier motion to amend by Raisch (and none is on the docket), so construed the Motion to Supplement as simply being itself the motion to amend. The first page of the Motion to Supplement presents a pair of substantive points bearing on arguments in the Petition; the Court discusses these below. The remainder of the Motion is simply a copy of 49 pages from the January 2018 Memorandum. (*Compare* Jan. 2018 Mem. at 2-50, *with* Dkt. 12 at 2-50.) The Court ordered Respondent to file a response to the Motion to Supplement, which Respondent did in a filing dated December 4, 2020. (*See* Dkt. 15.) The Petition is therefore fully briefed and ready for the Court's consideration.

On February 8, 2021, Raisch filed the Clarification Motion. The motion seeks to "clarify the issues this Court is considering" in this action, and also asks the Court to correct "false statements by the State." (Dkt. 18 at 1.) Raisch also purports to raise substantive concerns with points raised in the Respondent's answer to the Motion to Supplement. (*See id.* at 2.)

### III.   ANALYSIS

#### A.   Ground One

##### 1.   Procedural history

Ground One of the Petition concerns Raisch's view that the trial court should have instructed the jury that A.L. was an accomplice. (*See* Dkt. 1 at 5.) Understanding such an instruction's significance requires a discussion of Minnesota law. Under Minnesota

statute, a defendant cannot be convicted by accomplice testimony alone; accomplice

testimony must be "corroborated by such other evidence as tends to convict the defendant

of the offense, and the corroboration is not sufficient if it merely shows the commission

of the offense or the circumstances thereof." Minn. Stat. § 634.04. As a result, had

Raisch's jury treated A.L. as an accomplice, her testimony alone could not provide

sufficient evidence for a conviction.

Under Minnesota law, "the test for whether a particular witness is an accomplice is

whether the witness could have been indicted and convicted for the crime with which the

defendant is charged." *State v. Scruggs*, 822 N.W.2d 631, 640 (Minn. 2012) (quoting

*State v. Barrientos-Quintana*, 787 N.W.2d 603, 610 (Minn. 2010) (internal quotation

marks omitted)). Furthermore, accomplice liability requires that a witness "played a

knowing role in the commission of the crime and [took] no steps to thwart its

completion." *State v. Lynch*, No. A18-0456, 2019 WL 1890292, at *4 (Minn. Ct. App.

Apr. 29, 2019) (citing *Barrientos-Quintana*, 787 N.W.2d at 610-11), *review denied* (July

16, 2019). Raisch's view is that A.L. met these tests and should have been treated as an

accomplice.

At trial, the trial court specifically considered this issue and disagreed. Raisch's

trial counsel asked the court to instruct the jury to treat A.L. as an accomplice. (*See, e.g.*,

Dkt. 16-12 at 4, 6.) After argument, however, the trial court denied that request. (*See,

e.g.*, *id.* at 9-10.) During closing instructions, the trial court did instruct the jury that E.N.

was an accomplice, and that the jury therefore could not convict Raisch based on E.N.'s

uncorroborated testimony.  (*See* Dkt. 16-13 at 11.)  But the trial court gave no such instruction concerning A.L.  (*See id.* at 2-18.)

As noted above, on direct appeal, Raisch argued that the district court had abused its discretion when it refused to give an accomplice instruction concerning A.L.  *See Raisch*, 2017 WL 1134403, at *6.  The briefing did not contend that trial counsel's handling of A.L. comprised ineffective assistance of counsel.  *See generally id.* at *3-8.  The Minnesota Court of Appeals held that the trial court had not abused its discretion by failing to give an accomplice instruction as to A.L.  *See id.* at *6.

In his petition for further review to the Minnesota Supreme Court (*see* Apr. 2017 Pet.), Raisch repeated the claim that the trial court should have given an accomplice instruction as to A.L.  (*See id.* at 1.)  But again, the briefing raises no ineffective-assistance claims.  As noted above, the Minnesota Supreme Court declined further review of Raisch's appeal.

Raisch's petition for postconviction review is the first time Raisch raised ineffective assistance of counsel on this A.L.-as-accomplice issue.  With respect to his trial counsel, Raisch's point is not entirely clear, but seems to be that evidence of A.L.'s accomplice status was overwhelming and that, had his trial counsel been effective, that evidence would have been raised in the accomplice instruction argument and would have carried the day.  (*See* Jan. 2018 Mem. at 4-14.)  Furthermore, Raisch argues that his appellate counsel was ineffective because she failed to point out his trial counsel's ineffective handling of the evidence of A.L.'s accomplice status.  (*See id.* at 14, 25-26.)

The trial court rejected Raisch's ineffective-assistance arguments. For the ineffective-assistance-of-trial-counsel ("IATC") claim, the court stated that Raisch's argument was *Knaffla*-barred. (*See* Feb. 2018 Order at 3.) For the ineffective-assistance-of-appellate-counsel ("IAAC") claim, the court stated that, as to the A.L.-as-accomplice issues, Raisch's IAAC argument was an "evidentiary issue[] recast as an ineffective assistance of counsel claim" and was also "procedurally barred by the *Knaffla* rule." (*Id.* at 5.)

Raisch appealed from the trial court's order denying him postconviction relief. In his brief to the Minnesota Court of Appeals, he again claimed that A.L.'s role as an accomplice was mishandled by his trial and appellate counsel. (*See* Dkt. 10-6 at 15-20.) The Court of Appeals held that all of Raisch's IATC claims, including his claims pertaining to the A.L.-as-accomplice issue, were indeed *Knaffla*-barred. *See Raisch II*, 2018 WL 4391108, at *1. As for the pertinent IAAC claim, the Court of Appeals stated:

> Any decision by appellate counsel not to [argue that trial counsel was ineffective in his efforts to establish that A.L. was an accomplice] was well founded, since it would have constituted a challenge to trial strategy, and such strategic decisions are not subject to review for ineffective-assistance-of-counsel claims. "Which witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of trial counsel. Such trial tactics should not be reviewed by an appellate court, which, unlike the counsel, has the benefit of hindsight." Thus, Raisch's complaints about trial strategy cannot serve as the basis for an ineffective-assistance-of-counsel claim.

*Id.* at *2 (citation omitted).

As discussed above, after the Court of Appeals's decision, Raisch filed a petition for postconviction review with the Minnesota Supreme Court. (*See* Oct. 2018 Pet.) As to

the ineffective-assistance issues concerning A.L.'s accomplice status, Raisch alludes to
them only briefly.  The entirety of the discussion Raisch presented to the Minnesota
Supreme Court reads: "The appellate counsel failed to argue the trial counsel only points
to after the fact crimes, to ask for a jury instru[ction] of [A.L.].  That's the issue that
impedes Petitioner's request for an instruction, when the evidence and the trial testimony
[proves] firsthand knowledge that a crime is about to happen, Minn. Stat. 609.05, subd. 1,
2, 3."  (*Id.* at 5.)

### 2.    Analysis of IATC and IAAC claims

With this procedural history in place, the Court can unpack Raisch's Ground One
claims.  The Court will start with the Ground One IATC claim.  Respondent claims that
all of Raisch's IATC claims—including his Ground One IATC claim—are "barred by a
State procedural rule" and so "procedurally defaulted."  (*See, e.g.*, Dkt. 10 at 1; *see also
id.* at 4-6.)  Raisch appears to claim that none of his claims are procedurally barred—and
again, this presumably includes his Ground One IATC claim.  (*See* Dkt. 11 at 1-2.)

The U.S. Supreme Court has made clear that "a federal court may not review
federal claims that were procedurally defaulted in state court—that is, claims that the
state court denied based on an adequate and independent state procedural rule."  *Davila v.
Davis*, 137 S. Ct. 2058, 2064 (2017) (citations and footnotes omitted); *see also, e.g.*,
*Barnett v. Roper*, 904 F.3d 623, 629 (8th Cir. 2018) (quoting *Davila*, 137 S. Ct. at 2052).
In this case, the Minnesota courts applied just such a rule to all of Raisch's IATC claims
when he raised them in his postconviction-review petition.  Specifically, the trial court
held that Minnesota's *Knaffla* rule barred consideration of the claims, and the Minnesota

12

Court of Appeals agreed.  The *Knaffla* rule has repeatedly been determined to be the sort of adequate/independent state procedural rule that can trigger procedural default.  *See, e.g.*, *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011); *Riddle v. Minnesota*, No. 20-CV-1262 (ECT/ECW), 2021 WL 799490, at *9 (D. Minn. Jan. 8, 2021) (quoting *Murray v. Hvass*, 269 F.3d 896, 899-900 (8th Cir. 2001)), *R.&R. adopted*, 2021 WL 795164 (D. Minn. Mar. 2, 2021).  As a result, Raisch's IATC claims—including his Ground One IATC claim—are procedurally defaulted.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also, e.g.*, *House v. Bell*, 547 U.S. 518, 536 (2006) (quoting cases); *Stephen v. Smith*, 963 F.3d 795, 799 (8th Cir. 2020) (quoting *Skillicorn v. Luebbers*, 475 F.3d 965, 976-77 (8th Cir. 2007)).  As the Court understands Raisch, he contends that he can demonstrate cause for the default of his Ground One IATC claim.  Specifically, he attributes the default to his *appellate* counsel's own ineffective assistance (i.e., that counsel's failure to raise the Ground One IATC claim on direct appeal).  (*See* Dkt. 1 at 6-7; Dkt. 11 at 2.)

In appropriate circumstances, ineffective assistance by appellate counsel can serve as cause to excuse the procedural default of an IATC claim.  *See, e.g.*, *Trevino v. Thaler*, 569 U.S. 413, 422 (2013) (discussing *Martinez v. Ryan*, 566 U.S. 1 (2012)); *Becht v.

13

*United States*, 403 F.3d 541, 545 (8th Cir. 2005) (citing *Boysiewick v. Schriro*, 179 F.3d 616, 619 (8th Cir. 1999)).  But for ineffective appellate assistance to provide the needed cause, it must meet at least two requirements.  First, the relevant ineffective appellate assistance must itself be constitutionally problematic ineffective assistance.  *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim."); *Coleman*, 501 U.S. at 753-74; *Zinzer v. Iowa*, 60 F.3d 1296, 1299 (8th Cir. 1995) (citing cases).  Second, the petitioner must have exhausted—and not procedurally defaulted—the IAAC claim itself.  *See, e.g.*, *Davila*, 137 S. Ct. at 2064; *Edwards*, 529 U.S. at 451-53; *Beaulieu v. Minnesota*, 583 F.3d 570, 575 (8th Cir. 2009) (quoting *Taylor v. Bowersox*, 329 F.3d 963, 971 (8th Cir. 2003)).

Normally, then, the Court could turn directly to whether Raisch failed to exhaust, and/or procedurally defaulted, his Ground One IAAC claim.  Here, however, Respondent specifically states in his Answer that "Petitioner's claims are *not* barred by a failure to exhaust state remedies."  (Dkt. 10 at 1 (emphasis added).)  Under 28 U.S.C. § 2254(b)(3), "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement, although it must do so expressly."  Respondent plainly has expressly waived the requirement through counsel.  The Court thus assumes for present purposes that Raisch exhausted the Ground One IAAC claim.[6]

---

[6]    Frankly, the Court suspects that Raisch did not properly exhaust this claim. Exhaustion requires giving the relevant state courts "a full and fair opportunity to resolve

The next step is determining whether the Ground One IAAC claim itself presents constitutionally problematic ineffective assistance.  Recall that the Court is doing this here not to address the merits of the Ground One IAAC claim itself, but merely to address whether that IAAC claim can serve as "cause" excusing Raisch's procedural default of his Ground One IATC claim.  The distinction matters because it leads to a potential legal issue.  When this Court is trying to determine whether a state court erred in deciding an ineffective-assistance claim on the merits, the Court's review is "'doubly deferential.'"  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  That is, the Court must conclude not just that (1) a petitioner received ineffective assistance under the *Strickland* standard, but must

---

federal claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In Minnesota, this requires presentation to the Minnesota Supreme Court.  *See, e.g.*, *Turnage v. Fabian*, 606 F.3d 933, 936-37 (8th Cir. 2010) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  To fairly present an issue, the petitioner "must present both the factual and legal premises of his claims . . . ." *Dansby v. Hobbs*, 766 F.3d 809, 823 (8th Cir. 2014) (quoting *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994) (cleaned up)).  For the factual component, a petitioner must provide the state court "a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (discussing *Picard v. Connor*, 404 U.S. 270, 271-78 (1971)).  As for the law, a petitioner's argument must "refer[] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Dansby*, 766 F.3d at 823 (quoting *Abdullah v. Groose*, 75 F.3d 408, 412 (8th Cir. 1996) (en banc) (cleaned up)).

Under these standards, the Court is hard-pressed to conclude that Raisch fairly presented his Ground One IAAC claim the Minnesota Supreme Court.  (*See* Oct. 2018 Pet. at 2, 5.)  As best as the Court can tell, Raisch's entire presentation of the Ground One IAAC claim to the Minnesota Supreme Court rests in two portions of his petition for further review.  If Raisch's presentation of the Ground One IAAC claim gets over the line, it does so barely.  Notwithstanding all this, the Court will honor Respondent's waiver of the exhaustion defense, here and with respect to Raisch's other IAAC claims.

also conclude that (2) the state court's "adjudication of the [ineffective-assistance] claim . . . result[ed] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" (i.e., *Strickland*).

At present, however, the Court is addressing only whether the Ground One IAAC claim can excuse Raisch's procedural default of the Ground One IATC claim. It is an open question whether a court considering an IAAC claim for this purpose simply applies *Strickland* itself de novo (i.e., (1) above), or applies a "doubly deferential" standard of review (i.e., (1) and (2) above). *See, e.g.*, *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016) ("Our sister courts have split on the issue whether *de novo* review or AEDPA deference applies when a habeas petitioner advances a claim of ineffective assistance as cause to excuse procedural default (rather than as independent grounds for habeas relief)." (citing cases)).

In this case, however, the Court concludes it need not resolve the issue. The more petitioner-friendly standard is simply to apply *Strickland* de novo, and even on that standard, Raisch's Ground One IAAC claim does not reflect ineffective assistance.

Establishing ineffective appellate assistance is difficult. As the Eighth Circuit has stated:

> Under *Strickland*, in evaluating whether an attorney provided objectively unreasonable assistance, a reviewing court should minimize the effects of hindsight and recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Because of this presumption and the reality that effective appellate advocacy often entails screening out weaker issues, the Sixth Amendment does not require that appellate counsel raise every colorable or non-frivolous issue on appeal. "Absent contrary evidence," we assume that appellate counsel's failure to raise a claim was an exercise of "sound appellate strategy."

*Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (citations omitted); *cf. Charboneau v. U.S.*, 702 F.3d 1132, 1136 (8th Cir. 2013) ("Our review is particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal. 'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal[.]'" (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983))). "The question here is not whether counsel's choice to omit the argument on appeal was an intelligent or effective decision, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt." *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005). Indeed, the Supreme Court has recently noted that "[d]eclining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila*, 137 S. Ct. at 2067 (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Under these standards, the Court cannot conclude that Raisch's appellate counsel provided objectively unreasonable assistance when she did not include the Ground One IATC claim within the issues on direct appeal. The Court's review must be deferential, given that Raisch's appellate counsel specifically raised numerous arguments on direct appeal. (*See generally* Dkt. 10-3.) Indeed, Raisch's appellate counsel even raised an argument concerning A.L.'s status as an accomplice, claiming that the trial court erred "by refusing to instruct the jury that Raisch could not be convicted based on [A.L.'s] uncorroborated testimony where the jury could have found that [A.L.] was an accomplice." (*Id.* at 47.) Reviewing Raisch's claims in the Petition, this Court finds no

17

"contrary evidence" undercutting the presumption that deciding not to raise the Ground One IATC claim was an exercise of "sound appellate strategy." Furthermore, the Court cannot conclude that Raisch's Ground One IATC argument was "plainly stronger than those [arguments] actually presented to the appellate court." Given these points, the Court concludes that Raisch's Ground One IAAC claim does not present *Strickland*-level ineffective assistance of counsel.

Two points follow from this. First, because Raisch's Ground One IAAC claim does not rise to the level of a *Strickland* violation, the Ground One IAAC claim cannot establish cause excusing Raisch's procedural default of the Ground One IATC claim. Given that procedural default, the Court recommends dismissing the Ground One IATC claim with prejudice. *See Armstrong v. Iowa*, 418 F.3d 924, 927 (8th Cir. 2005) (finding that the district court properly dismissed procedurally barred claims with prejudice). Second, the fact that Raisch's Ground One IAAC claim does not rise to the level of a *Strickland* violation also means that the Ground One IAAC claim should be denied on the merits. The Court therefore also recommends dismissing Raisch's Ground One IAAC claim.[7]

---

[7]    As noted above, if one addressed the Ground One IAAC claim simply on the merits, the finding required for dismissal is less stringent—i.e., that if this Court applied AEDPA deference to the state court's determination concerning the Ground One IAAC claim, it would find that a state court could reasonably determine that Raisch's appellate counsel met the *Strickland* standard. But of course, this Court's conclusion on the more stringent point—i.e., that on *de novo* review, Raisch's appellate counsel met the *Strickland* standard—encompasses the weaker point.

**B.    Ground Two**

**1.    Claim construction and procedural history**

Ground Two of the Petition presents two more claims of ineffective assistance of counsel.  (*See* Dkt. 1 at 7.)  Here, the ineffective assistance apparently concerns an alleged failure by Raisch's trial and appellate counsel to argue that there was insufficient evidence to convict.  (*See id.*)  As the Court understands this argument, however, it ties to Raisch's Ground One contention that A.L. should have been considered an accomplice. (*See id.*)[8]

The Court construes Raisch's argument here as follows:  Raisch was charged with arson, but was found not guilty of that count.  Raisch claims that "there is no nexus" between him and the fire, and asserts that he was found not guilty of the arson "[entirely] due to 'uncorroborated accomplice testimony.'"  (*Id.* at 7.)  It is unclear, but Raisch seems to believe that he was found not guilty of the arson because the only testimony linking him to the fire was uncorroborated accomplice testimony.  Raisch then asserts

---

[8]    Raisch summarizes this argument as follows: "I.A.C. Trial/Appellate counsel Failure to argue the fact of insufficient evidence 'uncorroborated accomplice testimony' Minn. [Stat.] 634.04." (Dkt. 1 at 7.)  The "supporting facts" for this claim read as follows:

> Petitioner was charged with Arson, The Medical Expert Testified the fire was the bottomline cause of death, there is no nexus to the fire and Petitioner, nor any nexus to Petitioner 1st degree assault.  Petitioner was found not guilty of the arson, [entirely] due to "uncorroborated accomplice testimony" therefore the evidence of uncorroborated accomplice testimony is the same for the murder charges and 1st degree assault with no eyewitness or physical evidence, or alleged weapon Petitioner's conviction must be overturned.

(*Id.*)

that "the evidence of uncorroborated accomplice testimony is the same for the murder charges and 1st degree assault." (*Id.*)  Presumably, the idea is that the evidence supporting the arson charge was identical to that supporting the other charges, such that any flaw in the arson-related evidence carries over to whatever evidence supports the murder and assault convictions.

Given this discussion, the Court construes the Ground Two IATC claim to be that Raisch's trial counsel provided ineffective assistance by failing to press this argument at trial.  Furthermore, the Court construes the Ground Two IAAC claim to be that Raisch's appellate counsel provided ineffective assistance by failing to press the Ground Two IATC claim on direct appeal.

Raisch did not raise the Ground Two IATC claim on direct appeal.  While his pro se brief did raise the argument that "there was insufficient evidence that he caused the victim's death because [he] was not convicted of arson,"[9] Raisch did not argue that his trial counsel was ineffective for failing to press this argument.  *Raisch*, 2017 WL 1134403, at *6.  Furthermore, when Raisch filed his direct-appeal petition for further review with the Minnesota Supreme Court, the Ground Two IATC claim is nowhere to be found.  (*See generally* Apr. 2017 Pet.)  The Ground Two IATC claim is thus procedurally defaulted under Minnesota's *Knaffla* rule: Raisch failed to raise this

---

[9]    In addressing this argument, the Minnesota Court of Appeals stated: "[Raisch's] argument is misguided because he asserts that the state did not prove beyond a reasonable doubt that he caused the victim's death.  However, [Raisch] erroneously claims that the cause of death was arson where the medical examiner testified that the strikes to the victim's head could have been fatal." *Raisch I*, 2017 WL 1134403, at *1.

argument on direct appeal, but could have based on the trial record.  Minnesota courts are clear that "[w]hen a claim of ineffective assistance of trial counsel can be adjudicated on the basis of the trial record, it must be brought on direct appeal or it is barred by the *Knaffla* rule if raised in a postconviction petition."  *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007) (citing *Torres v. State*, 688 N.W.2d 569, 572 (Minn. 2004)); *see also Albantov v. State*, No. A20-0399, 2020 WL 6266360, at *4 (Minn. Ct. App. Oct. 26, 2020) (quoting *Nissalke v. State*, 861 N.W.2d 88, 93 (Minn. 2015)).

As with Ground One, the best construction of Ground Two of the Petition is that Raisch means for the Ground Two IAAC argument to provide cause excusing his procedural default of the Ground Two IATC argument.  This leads the Court back to the same standards and analysis discussed above with respect to Ground One—namely, for the Ground Two IAAC claim to fill this role, the Ground Two IAAC claim must itself constitute ineffective assistance, and Raisch must have exhausted it in the Minnesota state courts.

Reviewing the briefs submitted as part of Raisch's petition for postconviction review, it is hard to be sure whether they specifically raise the Ground Two IAAC claim.  Certain discussions about alleged insufficiency of the evidence appear to get close to general Ground Two ideas, but whether the Ground Two IAAC in its present form was fairly presented to the Minnesota courts is difficult to discern.  As with the Ground One IAAC claim, then, the Court has its doubts as to whether Raisch properly exhausted his Ground Two IAAC claim.  (*See, e.g.*, note 7 *supra*.)  But elaborate tracking of the claims

is unnecessary, given Respondent's concession that "Petitioner's claims are not barred by a failure to exhaust state remedies."  (Dkt. 10 at 1.)

The Court thus directly considers whether the Ground Two IAAC claim could itself qualify as ineffective assistance of counsel.  As with the Ground One IAAC claim, the Court concludes it does not.  The Court is aware of no "contrary evidence" rebutting the presumption that it was perfectly sound direct-appeal strategy not to raise the Ground Two IATC claim.  And given the difficulty in understanding exactly what the Ground Two IATC claim is in the first place, this Court cannot find that the Ground Two IATC claim was "plainly stronger" than the arguments actually presented on direct appeal.

As before, this determination has two impacts.  First, because appellate counsel's conduct itself did not pose a constitutional violation, the Ground Two IAAC claim cannot provide the cause needed to excuse Raisch's procedural default of the Ground Two IATC claim.  As a result, the Court recommends dismissing the Ground Two IATC claim with prejudice.  And second, because the Ground Two IAAC claim does not pose a constitutional violation, the Court recommends denying the Ground Two IAAC claim with prejudice.

## C.    Ground Three

### 1.    Procedural history

Ground Three of the Petition again contends that Raisch received ineffective assistance of trial and appellate counsel.  (*See* Dkt. 1 at 8.)  The issue here concerns closing arguments.  (*See id.*)  Raisch contends that during evidence presentation, his trial counsel presented evidence that Raisch "was not at the crime scene nor did he have

anything to do with murder or assault or arson." (*Id.*)  At closing arguments, however, his counsel purportedly did not argue these points, stressing instead that Raisch had lacked the intent to commit murder.  (*See id.*)  Raisch refers to this as "conceding [his] guilt" during closing arguments, and claims that doing this was ineffective assistance of trial counsel.  (*Id.*)  As for ineffective assistance of appellate counsel, Raisch again claims that his appellate counsel's failure to raise this issue on direct appeal was itself ineffective assistance.  (*See id.* at 9.)

Raisch concedes that he did not raise his Ground Three IATC claim on direct appeal.  (*See id.* at 9; *see also, e.g.*, Dkt. 10-3 at 23-50 (argument section of direct-appeal brief; no IATC arguments).)  Raisch did raise his Ground Three IATC claim in his petition for postconviction review, and also asserted that the failure of his direct-appeal counsel to raise this IATC claim was ineffective assistance of appellate counsel.  (*See* Jan. 2018 Mem. at 30-31.)

As the Court reads the trial court's order, the trial court handled the IATC claim as part of addressing the parallel IAAC claim.  (*See* Feb. 2018 Order at 5-6.)  Ultimately, the trial court determined that the Ground Three IATC claim was *Knaffla*-barred.  Under Minnesota law, the trial court stated, when a petitioner for postconviction review presents an IATC claim based on an improper concession of guilt, applying the *Knaffla* rule is "somewhat more complicated":

> First, the post-conviction court must review the record to see if trial counsel in fact conceded guilt.  If the post-conviction court determines from the trial record that there was no concession of guilt, no further evidence is required, no evidentiary hearing is necessary and there is no exception to the *Knaffla* bar.  But if there is evidence on the trial record that trial counsel in fact

conceded guilt, the court must proceed to the second prong of the inquiry—whether the defendant acquiesced in that concession.

(*See id.* (citing *Torres v. State*, 688 N.W.2d 569, 572-73 (Minn. 2004).)

Applying this test, the trial court stopped after the first prong because it determined, "[a]fter reviewing the trial record," that Raisch's trial counsel had not conceded his guilt.  (*See id.* at 6.)  As a result, under the modified *Knaffla* test for claims of improper guilt concessions, Raisch's Ground Three IATC claim was indeed *Knaffla*-barred.

Turning to the IAAC claim, the trial court stated that Raisch's "claims concerning the trial counsel fail to show that trial counsel's performance fell below the objective standard of reasonableness and lack merit."[10]  (*Id.*)  As a result, Raisch's IAAC claim for not arguing ineffective trial counsel "fails because trial counsel was not ineffective." (*Id.*)  The Court reads this as holding that Raisch's Ground Three IAAC claim fails on the merits.

On appeal, Raisch plainly raised challenged the trial court's finding concerning the Ground Three IAAC and IATC claims.  (*See* Dkt. 10-6 at 8, 13.)  For the IATC claim, Raisch attacked the trial court's *Knaffla* conclusion: "Petitioner believes [his] claim is such that the reviewing court needs additional facts to explain the Trial Counsel's decisions, and an exception to the *Knaffla* rule, because Petitioner[']s alleged such facts

---

[10]    Given that the trial court had already determined that the Ground Three IATC claim was *Knaffla*-barred, the Court construes the trial court's additional claim as an alternative holding (i.e., that even if Raisch's Ground Three IATC claim were not *Knaffla*-barred, it would fail on the merits).

which, if proved by a fair preponderance of the evidence would entitle Petitioner to the

Requested Relief." (*Id.* at 13-14.)  For the IAAC claim, Raisch's argument appears to be

that because his IATC claim is meritorious and not *Knaffla*-barred, failure to raise that

argument constituted ineffective assistance of appellate counsel.  (*Id.* at 13.)

This leads us to the Minnesota Court of Appeals's decision.  While not entirely

clear, it appears that the Court of Appeals held that all of Raisch's IATC claims—

including the Ground Three IATC claim—were *Knaffla*-barred.  *See Raisch II*, 2018 WL

4391108, at *1-2.  Turning to the Ground Three IAAC claim, the Court of Appeals

analyzed it as follows:

> Raisch argues that his appellate counsel failed to raise on direct appeal the
> argument that trial counsel conceded guilt during closing argument.  "When
> counsel for the defendant admits a defendant's guilt without the defendant's
> consent, the counsel's performance is deficient and prejudice is presumed."
>
>> In evaluating whether defense counsel made an improper
>> concession, we first perform a de novo review of the record to
>> see if counsel in fact conceded the defendant's guilt and, if so,
>> we must proceed to the second prong of the inquiry and
>> determine whether the defendant acquiesced in that
>> concession.
>
> A review of the record shows that trial counsel did not concede guilt.  Raisch
> claims that, while his counsel, throughout the trial, employed the theory of
> the case that Raisch "had nothing to do with the crimes he was charged with
> and that A.L. & E.N. were the perpetrators," during closing argument, his
> attorney "abandoned this strategy . . . for the absurd argument that defendant
> thought he had killed [the] victim during the assault so there could be no
> intent to kill with fire."  We consider the attorney's statements in the context
> of the entire record.  When read as a whole, the transcript makes clear that,
> rather than admitting guilt, Raisch's attorney was simply arguing that the
> state had not met its burden on the specific-intent element of second-degree
> murder, even if the jury chose to believe the state's witnesses.  Accordingly,
> it was not an abuse of discretion for the postconviction court to conclude
> Raisch's claim that his trial counsel conceded guilt lacked merit and could

25

not serve as a basis for postconviction relief.

*Id.* at *2.

Raisch filed a Petition for Review with the Minnesota Supreme Court.  As best as the Court can tell, three parts of the Petition for Review concern Raisch's guilt-concession arguments.

- First, in a section called "Legal Issues and Ruling Below," Raisch suggests that his appellate counsel provided ineffective assistance by not arguing that Raisch's trial counsel had conceded Raisch's guilt.  (*See* Oct. 2018 Pet. 2.)  Raisch seems to express disagreement with the Court of Appeals's conclusion that "Raisch's attorney was simply arguing that the state had not met its burden on the specific intent element of second-degree murder," but the nature of Raisch's disagreement is unclear.  (*Id.*)

- Second, in a section called "Statement of Facts," Raisch states that his trial counsel "made five concessions of guilt in closing arguments, contrary to Petitioner's trial testimony of not being there."  (*Id.* at 4.)

- Third, in a section called "Reasons Why Supreme Court Review Is Necessary," Raisch states the following: "The five concessions by trial counsel closing [arguments] the plain language of the statements violates Petitioner's 6th Amend; fair trial and is contrary to Petitioner's trial testimony *State v. Dukes*, S. Ct. 621, N.W.2d (2001)."  (*Id.* at 5 (errors in original).)

As discussed above, the Minnesota Supreme Court denied Raisch's Petition for Further Review.

### 2.    Analysis

The resolution of Raisch's Ground Three IATC claim resembles the resolution of the analogous Ground One and Two claims.  Raisch and Respondents disagree about whether the Ground Three IATC claim is procedurally barred—Raisch says no; Respondents, yes.  For the same reasons discussed with respect to the Ground One and

Two IATC claims, the Court agrees with Respondents; the Minnesota Court of Appeals held that all of Raisch's IATC claims were *Knaffla*-barred, and *Knaffla* is plainly a rule admitting of procedural default. The upshot is that Raisch's Ground Three IATC claim is procedurally defaulted.

Again, then, the Court must decide whether Raisch can demonstrate cause for the default and actual prejudice. Raisch's claim, again, appears to be that the ineffective assistance of his appellate counsel provides the relevant cause that excuses the procedural default. As before, the relevant ineffective assistance must itself be constitutionally problematic ineffective assistance, and the Ground Three IAAC must have been exhausted and not procedurally defaulted. Yet again, the Court will accept Respondent's agreement that Raisch exhausted the Ground Three IAAC claim here, making the ultimate test whether or not the Ground Three IAAC claim actually reflects constitutionally problematic ineffective assistance. The standards discussed for Ground One will apply here as well, and the Court will again take the petitioner-friendly step of applying *Strickland* de novo.

Applying the standards discussed above, the Court cannot conclude that Raisch's Ground Three IAAC claim reflects ineffective assistance. As noted above, "'[a]bsent contrary evidence,' we assume that appellate counsel's failure to raise a claim was an exercise of 'sound appellate strategy,'" *Roe*, 160 F.3d at 418, and "[d]eclining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court," *Davila*, 137 S. Ct. at 2067 (citing *Smith*, 528 U.S. at 288). As happened with Raisch's other IAAC claims, Raisch presents

no evidence that his appellate counsel's failure to raise the Ground Three IAAC claim was anything but the exercise of sound appellate strategy, and this Court cannot conclude that the Ground Three IAAC claim was stronger than the claims that Raisch's direct-appeal counsel actually pursued.

Yet again, then, this failure of the Ground Three IAAC claim carries two implications.  First, because the Ground Three IAAC claim does not comprise ineffective assistance of appellate counsel, it follows that the Ground Three IAAC claim cannot serve as cause excusing the procedural default of the Ground Three IATC claim.  That claim is therefore procedurally defaulted, and so the Court recommends dismissing the Ground Three IATC claim with prejudice.  Second, the fact that Raisch's Ground Three IAAC claim does not rise to the level of a *Strickland* violation also means that the Ground Three IAAC claim should be denied on the merits.  The Court therefore recommends denying the Ground Three IAAC claim on the merits.

**D.    Ground Four**

**1.    Claim construction and procedural history**

Ground Four of the Petition also posits ineffective assistance of Raisch's trial counsel and appellate counsel.  (*See* Dkt. 1 at 10-11.)  Both arguments stem from use of fingerprint evidence at trial.  (*See id.* at 10.)  As referenced above, A.L.'s testimony was part of the evidence used to convict Raisch.  Raisch insisted at trial, and has continued to insist since, that A.L.'s testimony contains numerous inaccuracies or inconsistencies.  Ground Four concerns one such inconsistency, concerning a fingerprint on A.L.'s truck.  (*See id.* at 10.)

As the Court understands it, the purported discrepancy is as follows.  Forensic investigators found two fingerprints from a person named Matthew Roberts on A.L.'s truck.  (*See* Dkt. 16-10 at 104-05.)  During the prosecutor's closing arguments, he summarized various evidence and claimed that it established A.L.'s credibility.  (*See, e.g.*, Dkt. 16-13 at 25-37.)  Among this was the evidence concerning Roberts' fingerprint.  (*See id.* at 35.)  The prosecutor stated that (1) A.L. had testified that she knew Roberts, (2) "a day or two after the incident . . . Roberts came up to her truck and actually touched her truck and talked to [A.L.]," and (3) two prints "taken off" the truck "matched" Roberts.  (*See id.*)  The prosecutor, during closing, cited this as one example of evidence "lend[ing] credibility to [A.L.'s] statement."  (*Id.*)

On direct appeal, none of Raisch's arguments—either in his counsel's appellate brief or in Raisch's own supplemental brief—concerned this fingerprint-related evidence.  (*See* Dkt. 10-3 at 23-56 (comprising appellate-brief arguments); *Raisch*, 2017 WL 1134403, at *6-8 (summarizing arguments in Raisch's pro se brief).  Moreover, nothing in the Court of Appeals ruling discusses this evidence in any way.  *See generally Raisch*, 2017 WL 1134402, at *3-8.

In the postconviction-review petition, Raisch argued that his trial counsel should have impeached A.L. for various asserted lies.  (*See* Jan. 2018 Mem. at 31-36.)  One of these lies concerned the fingerprints on A.L.'s truck.  According to Raisch, "A.L. testified that Mathew Roberts leaned up against her truck and did not get in during her March 8, 2015 trip to Defendant's mother's house.  BCA Forensic experts located Mr. Robert's fingerprints on A.L.'s truck.  The expert's report shows that the fingerprints are

consistent with Mr. Roberts getting into the truck.  Further, the March 8th visit could not

have been the source of the prints, as A.L. arrived there with her mother, in her mother's

car, not in her truck."  (*Id.* at 35 (citations omitted).)  The general idea here appears to be

that Raisch's trial counsel should have pressed A.L. on (among other things) the

discrepancies between certain forensic evidence and A.L.'s account of how Roberts's

fingerprints got onto A.L.'s truck.

As best as the Court can tell, the trial court treated Raisch's general argument—

that his trial counsel should have cross-examined A.L. on various purported discrepancies

in her story—as a claim of ineffective assistance of trial counsel.  The court thus

determined that the argument was *Knaffla*-barred, since Raisch's argument was one

known at time of direct appeal, but not made on direct appeal.

In his appeal of the denial of the postconviction-review petition, Raisch appears to

argue that his trial counsel failed to adequately investigate the facts of the case, as

illustrated by the trial counsel's failure to cross-examine A.L. about her account of

Roberts's fingerprints on her car.  (*See* Dkt. 10-6 at 22.)  In addressing this claim, the

Minnesota Court of Appeals stated the following:

> Raisch also argues that his appellate counsel failed to raise the argument that
> trial counsel was ineffective by failing to sufficiently present facts
> concerning forensic evidence of *his* fingerprint on A.L.'s truck and other
> facts that, according to Raisch, would have undermined A.L.'s testimony at
> trial.
>
> This, again, is a challenge to trial strategy.  "Trial counsel's performance is
> presumed to be reasonable."  And this court will "not generally review a
> claim for ineffective assistance of counsel based on trial strategy."  Trial
> strategy includes "the extent of counsel's investigation and the selection of
> evidence presented to the jury."  The evidence Raisch's attorney chose to

present at trial and question witnesses about is a matter of trial strategy, and as discussed in the prior section, is not a matter this court will second guess on appeal.

*Raisch*, 2018 WL 4391108, at *3 (citations omitted).

Raisch's present argument seizes on an apparent error made by the Court of Appeals in the first quoted paragraph: the court suggested that the relevant forensic evidence concerned **Raisch's** fingerprint being on A.L.'s truck, rather than **Robert's** fingerprints. (*See* Dkt. 1 at 10 ("The Court of Appeals took this argument and interjected Mr. Raisch's prints on the truck, then used that as a basis to rule against Petitioner and that's an errant fact that they refuse to address.").)

After the Court of Appeals issued the opinion quoted above—which is the Court of Appeals' decision affirming the trial court's decision to deny Raisch's postconviction-review petition—Raisch raised the error in his petition for further review to the Minnesota Supreme Court. (*See* Oct. 2018 Pet. at 2, 5.) The Minnesota Supreme Court denied further review.

### 2.    Analysis

As with his other Petition grounds, Raisch raises Ground Four as an ineffective-assistance-of-counsel claim. It is somewhat unclear, however, whether Raisch means to raise both an IATC claim and an IAAC claim. But various responses Raisch makes to questions within the Ground Four portion of the petition template suggest that he means to argue ineffective assistance both by trial counsel and appellate counsel. (*See* Dkt. 1 at 10 (responses to subparts (b) and (c) of Ground Four).) But both arguments are fatally flawed, for reasons that become clear given Ground Four's procedural history.

Any sort of Ground Four IATC claim cannot get off the ground because trial counsel had nothing to do with the apparent error in the *Raisch II* decision. Again, the error Raisch points to here is one made by the Minnesota Court of Appeals, not on direct appeal, but in addressing Raisch's appeal from the trial-court decision denying his petition for postconviction review. When the Court of Appeals made the presumed error, there was simply no trial-counsel involvement whatsoever; Raisch alone handled his postconviction-review petition. As a result, the Court recommends denying Ground Four to the extent Raisch means to press an IATC claim.

Any IAAC claim has the same problem. Trial counsel had nothing to do with the handling of Raisch's postconviction-review petition, nor did any appellate counsel. Again, Raisch handled that petition without any attorney assistance. So just as the facts of Ground Four do not admit of an IATC claim, they also do not admit of an IAAC claim. The Court therefore recommends denying Ground Four to the extent Raisch means to press an IAAC claim.[11]

---

[11]    Out of an abundance of caution, and the need to construe pro se filings charitably, *see Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)), the Court will also address a different way to interpret Ground Four. Rather than focus on the apparent *Raisch II* error, one might read Ground Four as raising more broadly a failure to confront A.L. with the alleged discrepancies in her story at trial during cross-examination. On this read, Raisch's Ground Four IATC and IAAC claim take clearer form: the IATC claim charges Raisch's trial counsel with failing to appropriately cross-examine A.L., and the IAAC claim is that Raisch's appellate counsel failed to raise this IATC claim.

Even if the Court construed Raisch's Ground Four arguments this way, however, it would still recommend dismissal—as these IATC and IAAC arguments would have the same problems that afflicted Raisch's other arguments. That is, the Ground Four IATC claim will again be *Knaffla*-barred, and the Ground Four IAAC claim will not itself qualify as ineffective assistance (meaning that the Ground Four IAAC claim fails on the

**E.     Supplement to Motion**

On June 3, 2020, Raisch submitted the Supplement.  As discussed above, the

Court "granted" the Supplement "to the extent it proposes additional grounds for relief

for consideration as part of Raisch's original Petition."  (Dkt. 17 at 2.)  On the Court's

read, the Supplement raises three points, which the Court will address separately.

**1.     Discussion of fingerprint evidence**

The Supplement has a paragraph discussing the fingerprint evidence relevant to

Ground Four.  Raisch states the following:

> Please Take Note: Fingerprint evidence response by the state filed 5.31.19,
> p. 10, "Re: Fingerprints on A.L Truck") Note; p.6 of Court of Appeals A18-
> 0536 Filed 9.17.2018 ("Re: "His" Fingerprints on A.L. Truck").  The State
> has succeeded in misleading the Minn. Court of Appeals into believing the
> fingerprint are Petitioner's that was designed to conceal and twist Petitioner's
> argument to best fit the answer.

(Dkt. 12 at 1.)

The Court has taken this paragraph into account in addressing Ground Four above,

and it does not change the Court's conclusions.  Of particular note, the Court sees no

evidence that the presumed error in the *Raisch II* decision was because of the State

"misleading" the Court of Appeals during the relevant briefing.

---

merits and does not provide cause excusing the Ground Four IATC claim's procedural
default).  So even on this charitable construal of Ground Four, the Court would
recommend dismissing the Ground Four IATC claim, and would recommend dismissing
the Ground Four IAAC claim.

### 2.    Discussion of false evidence from A.L.

A second paragraph in the Supplement suggests potentially new ineffective-assistance claims:

> I.A.C. both appellate/trial counsel for allowing the prosecutor to extract false testimony from A.L. to bolster and vouch her testimony, by misrepresenting forensic evidence to the jury violating Petitioner Right's to a Fair Jury Trial under *Jenkins v. Artuz*, 2002 U.S. App. Lexis 5621, *Darden v. Wainwright*, [477 U.S. 168 (1986)].

(*Id.*)

As the Court reads this paragraph, Raisch means to press something like the sort of argument that the Court saw as a potential alternative reading of Ground Four. (*See* note 12 *supra*.) In other words, the IATC claim here is that Raisch's trial counsel failed to appropriately cross-examine A.L. and expose inconsistencies in her story, and the parallel IAAC claim is that Raisch's counsel on direct appeal failed to raise this IATC claim. For the reasons discussed in note 12 of this Report and Recommendation, however, the Court concludes that neither claim would succeed.

### 3.    Submission of January 2018 Memorandum

As a final point concerning the Supplement, the Court addresses Raisch's decision to simply attach the bulk of the January 2018 Memorandum that Raisch originally provided to the trial court as part of his petition for postconviction review. Raisch's intention here is unclear, but the Court construes him as asking the Court to go through the January 2018 Memorandum and consider any of the points and facts therein to the extent that they might support any of Raisch's various Petition grounds.

The Court will not do this.  It is not the Court's responsibility to put together Raisch's arguments for purposes of his § 2254 petition; that is his job.  "'Judges are not like pigs, hunting for truffles buried in [the record].'" *Richards v. Dayton*, No. 13-CV-3029 (JRT/JSM), 2015 WL 1522199, at *10 (D. Minn. Jan. 30, 2015) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)), *R.&R. adopted*, 2015 WL 1522237 (D. Minn. Mar. 30, 2015); *cf.* Rules Governing § 2254 Cases in the U.S. District Courts at Rule 5 (requiring § 2254 petition to "substantially follow" standardized form).

## F.   Clarification Motion

Given the outcomes above, the Court believes that the Clarification Motion is moot.  The various substantive points encompassed by the Clarification Motion have been taken into account by the Court as part of its decision-making process.  The Court therefore recommends denying the Clarification Motion as moot.

## G.   Recommendation Concerning Certificate of Appealability

As a final matter: a § 2254 petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A court may not grant a COA unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Furthermore, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim"—as here— "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, it is highly unlikely that any other court, including the Eighth Circuit, would treat the Petition differently than this Court is treating it here. The Court therefore recommends not granting Raisch a COA in this matter.

**RECOMMENDATION**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Petitioner Robert Sam Raisch, Jr.'s Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Dkt. 1) be **DISMISSED WITH PREJUDICE**.

2.    Petitioner Robert Sam Raisch, Jr.'s Pro Se Motion for Clarification of Facts and Correction of Materially Prejudicial False Statements by Respondents (Dkt. 18) be **DENIED** as moot.

3.    No certificate of appealability be issued.

Dated: July 29, 2021                                    *s/Elizabeth Cowan Wright*
                                                       ELIZABETH COWAN WRIGHT
                                                       United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).